EMPLOYEES OF UTAH FUEL CO. AT CLEAR CREEK v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 6196.   Decided July 13, 1940.   (104 P. 2d 197.)

*Marl D. Gibson,* of Price, for plaintiffs.

*Joseph Chez,* Atty. Gen., *S. D. Huffaker,* Asst. Atty. Gen., and *A. N. Ferro* and *Henry J. Binch,* both of Salt Lake City, for defendants.

McDONOUGH, Justice.

This action is brought by petitioners, certain employees of Utah Fuel Company at Clear Creek, Utah, to review a decision of the Industrial Commission wherein the latter reversed a decision of the appeals examiner and denied benefits to petitioners under the Unemployment Compensation Act because said petitioners were unemployed, during the period for which benefits are claimed, as a result of a strike. Sec. 5(d) of the Unemployment Compensation Act

(Chap. 1, Laws of Utah 1936 (Special Session), as amended by Chapter 43, Laws of Utah 1937) provides that:

"An individual shall be ineligible for benefits:

\* \* \*

"(d) For any week in which it is found by the commission that his total or partial unemployment is due to a stoppage of work which exists because of a strike involving his grade, class, or group of workers at the factory or establishment at which he is or was last employed."

Subsequent to the filing of claims for benefits by petitioners and other employees of coal operators in Utah an investigation of said claims and of the surrounding circumstances was made by a representative of the Industrial Commission. No hearing was had, but on the basis of the facts found by the representative compensation was denied petitioners in a decision and order of the Industrial Commission, dated May 19, 1939, which held that the stoppage of work in the bituminous coal industry of Utah during the period of May 4th to May 18th, inclusive, was due to a strike. This decision or "initial determination" of the Commission was made pursuant to Sec. 6(b) of the Act, which provides:

"(b) \* \* \* in any case in which the payment or denial of benefits will be determined by the provisions of section 5(d) of this act, the deputy shall promptly transmit his full findings of fact with respect to that subsection to the commission which, on the basis of evidence submitted and such additional evidence as it may require, shall affirm, modify, or set aside such findings of fact, and transmit to the deputy a decision upon the issues involved under that subsection which shall be deemed to be the decision of the deputy.

Upon petitioners' protest against their claims being included among those denied by the order of May 19th, a further investigation was made by the representative relative to the contention of petitioners that the stoppage of work at the Clear Creek property was due to the fact that there was no work to be done at the mine, rather than because of the general stoppage of coal mining in the area

found by the representative in the order of May 19th to be due to a strike.

The representative by a decision rendered June 20th held against this contention. Petitioners appealed from such decision and order.

A hearing date and place was set by the appeals examiner, and petitioners and the Utah Fuel Company were notified to attend. The hearing was held at Price, Utah, on July 6, 1939. Petitioners and the Utah Fuel Company were represented by attorneys. Both sides called witnesses and were afforded full opportunity to present their views. On July 11, 1939, the appeals examiner made findings of fact, conclusions of law, and entered a decision reversing the initial determination order and allowing benefits to petitioners.

Within the time allotted by statute the Utah Fuel Company filed a request for a hearing before the Industrial Commission, alleging that the findings and decisions of the appeals tribunal were erroneous. The application for rehearing was denied by the Industrial Commission, August 14, 1939, but at the same time, acting pursuant to Sec. 6(e), the Commission on its own motion set aside the decision of the appeals tribunal and, after making findings of fact and conclusions of law, entered a decision and order denying benefits because the stoppage of work was due to a strike fomented by the workers.

The various steps in the proceedings before the Industrial Commission have been specifically set out because petitioners complain that findings of fact were made in the "initial determination" although no hearing was held; that no testimony on certain points was adduced before the appeals examiner; and that the Commissioner in reversing the appeals tribunal made findings and based its decision on facts not presented before the appeals examiner.

But Section 6(b) does not contemplate a hearing before the deputy or representative. He is charged with examining

the claim and, on the basis of facts found, with making an "initial determination"; or in conformity with the provisions of the portion of Sec. 6(b) hereinabove quoted to transmit his findings to the Commission. If no one contests such determination the matter is at rest. This makes for expeditious handling of claims. If the claimant or any interested party disagrees with the "initial determination", he may file an appeal within five days (Sec. 6(b) and apply for a hearing. A full hearing shall be afforded all parties (Sec. 6(c) after which the appeals tribunal "shall affirm or modify the findings of fact and decision of the deputy."

At the hearing held as a result of their appeal petitioners were given full opportunity to present evidence and urge their case. The findings of the representative had been published and petitioners had an opportunity to present evidence to refute said findings or to establish other facts which would tend to modify the result. After the close of the hearing before the appeals tribunal the examiner made findings based on the findings of the representative as modified, amplified, or overthrown by evidence presented at the hearing. Certainly the examiner is not required to discard completely the findings of the representative. To do so would make useless the "initial determination" whenever there was an appeal. Nor is such a procedure necessary to afford an appealing party due process of law. At the hearing he knows fully the findings of the representative and has full opportunity to present his case and to disprove any findings. Moreover, to hold that the findings of the deputy must be discarded because not based on evidence presented at a hearing is to assume an adversary relationship between the representative and appellant. Such is not the case. The representative is an officer of the government, presumed to be completely fair and impartial, and disinterestedly seeking the true facts. His findings need not be treated as those of a partisan to the controversy.

It is further to be noted that the petitioners on their appeal from the decision of the representative proceeded on the

theory that regardless of the correctness of the decision of May 19th, holding that stoppage of work in the coal industry of the state during the period here in controversy was due to a strike, nevertheless special circumstances, as hereinabove recited, made such ruling inapplicable to them. The evidence adduced before the appeal tribunal, the record of which was subsequently before the Commission, was directed to that issue. Taking the record before us as a whole we are of the opinion that the only matter presented to the appeal tribunal and the Commission was whether the representative correctly held by its decision of June 20th that petitioners came within the purview of the order of May 19th, and the correctness of the latter order was not in issue. However, even if the appeal from the "initial determination" involved the correctness of the order of May 19th, as well as that of June 20th, we are of the opinion that the Commission was justified, under the evidence hereinafter adverted to, in concluding that the stoppage of work referred to in the order of May 19th was due to a strike.

In this case the Commission "set aside" the decision of the appeal tribunal "on the basis of the evidence previously submitted" and on its own motion affirmed the decision of its representative, made in the "initial determination." Such action was in strict conformance with the statute, Section 6(e) of which reads as follows:

"The commission may on its own motion affirm, modify or set aside any decision of an appeal tribunal *on the basis of the evidence previously submitted* in such case, or direct the taking of additional evidence * * *." (Italics added.)

Petitioners cannot complain that they were not heard again by the Commission. They were heard fully before the appeals examiner and afforded an opportunity to meet evidence introduced by other parties or findings set out by the representative. Other parties were not allowed to introduce evidence before the Commission on appeal so petitioners were deprived of no right to meet and refute testimony. In

no way were petitioners denied due process of law. See 12 Am. Jur., Sec. 573, p. 267.

Petitioners also complain that the decision of the Commission is illegal, not sustained by the evidence, and contrary to law. There is very little dispute about the facts. We shall state them briefly.

Petitioners are "contract" miners working for the Utah Fuel Company in its Clear Creek coal mine. They are all members of the United Mine Workers of America Labor Union. Prior to March 31, 1939, petitioners and the Utah Fuel Company were parties to an agreement between the Union and the Utah Coal operators, which agreement set out hours of work, wage scale, conditions of employment, etc. Said agreement, which obtained throughout the United States, expired on March 31, 1939. As that date approached the national officers of the Union and coal operators in the Central Competitive Area entered negotiations for a new contract. By March 31st no agreement had been reached so the Utah coal operators and the local U. M. W. Union for district No. 22 entered into an extension agreement which provided that they were to continue indefinitely under the terms of the old contract, but either party had the right to terminate the extension agreement on fifteen days notice. On April 19, 1939, the Union notified the Utah coal operators that the extension agreement would be terminated and that mining operations would stop at midnight on May 4, 1939.

The night shift at the Clear Creek mine normally worked from 7 p. m., until 2 a. m. On the night of May 3rd, the night shift was told not to report on May 4, 1939. Mining operations in the Clear Creek mine were suspended beginning at the end of the day shift on May 4, 1939. On May 11th, an agreement was reached by the Union and the operators in the Central Competitive Area and District No. 22 of the Union was notified. The Utah Union immediately submitted the new agreement to the Utah coal operators for approval, which approval was given by the operators on May 18, 1939.

Petitioners point out that the night shift was told not to come to work on May 4. But testimony was offered that the night shift merely loads and does not dump its coal. The Utah Fuel Company points out that it did not want coal standing in its mine and that no workmen would be present to dump the coal on May 5th. The Commission reasonably could find from this that the night shift did not work on May 4th because of a strike called for midnight of that day (during the time of the shift).

The fact that a "work sign" was not posted at the mine— a customary procedure on the days when the mine was to operate—or that petitioners were not requested to work from May 4th to 18th does not show that the stoppage was not due to a strike. The Utah Fuel Company's mine was unionized. The management dealt with the elected Union officials. When notified by them that work would stop at midnight May 4th, it apparently relied on that statement. Surely an employer is justified in relying on a notice affecting his union employees given by an authorized union official. There is no controversy as to the authority of the official who gave the notice. Indeed, it would be perhaps a display of bad faith and lead to trouble with the union were an employer to try to encourage men to come to work during a strike and while negotiations were proceeding between employer and employee representatives.

Petitioners assert that the Utah Fuel Company started to repair its tipple and do other construction work during this period in question and that the portion of the mine wherein work was being prosecuted was practically worked out; that therefore the company was not in a position to mine coal and did not have work for petitioners. From this they reason that stoppage was not due to a strike. Whatever the facts be, we think them immaterial. After the company was notified and the men left work, it matters not what the company did at its mine until the dispute was settled and the facts be, we think them immaterial. After the company caused the stoppage of work (other than the May 4th night

shift already discussed). The strike caused the stoppage.

There was a conflict on whether or not the company had orders for coal and therefore would have mined coal, had the strike not been called. This, too, is immaterial. If workers walk out on a strike and refuse to return, except on a certain contingency, their unemployment is due to a strike regardless of any speculation or proof as to whether they would have been totally or partially unemployed had they not struck. Petitioners talk much about the burden of proof as though an application for benefits were a suit between two adverse parties. But this and other cases under the Unemployment Compensation Act are not suits of plaintiff versus defendant. They are simply applications for benefits from a fund which the Industrial Commission is administering. It is incorrect to say that the burden of proof is on an employer in circumstances such as are here presented to show that he had work available, and that if he fails to sustain that burden benefits must be paid to striking employees.

The record contains evidence on which the Industrial Commission reasonably could have found that petitioner's unemployment was due to a stoppage of work due to a strike.

The order of the Industrial Commission is affirmed.

MOFFAT, C. J., and WOLFE and LARSON, JJ., concur.

PRATT, Justice (concurring).

I concur. These proceedings before the administrative tribunals are subject to the same defects to which I referred in my opinion filed in the *Logan-Cache Knitting Mills* v. *Industrial Commission and Charles F. Hull*, 99 Utah 1, 102 P. 2d 495.