FORD MOTOR COMPANY *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & others.

Middlesex.    November 9, 1950. — February 6, 1951.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Employment Security,* Stoppage of work through labor dispute, Voluntary unemployment.    *Words,* "Factory," "Establishment."

Discussion by WILKINS, J., of the phrase "factory, establishment or other premises" in G. L. (Ter. Ed.) c. 151A, § 25 (b), as appearing in St. 1941, c. 685, § 1.

That a Massachusetts assembly plant and a Michigan manufacturing plant of a company engaged in the manufacture, assembly and sale of motor vehicles were "functionally integrated" as parts of the business "unit" conducted by the company did not show error of law in a finding by the board of review in the division of employment security that a stoppage of work and consequent unemployment of employees at the Massachusetts plant because of a failure to receive assembly parts from the Michigan plant where a strike arising from a labor dispute was in progress were not due to a labor dispute "at the factory, establishment or other premises at which . . . [the Massachusetts employees were] last employed" within G. L. (Ter. Ed.) c. 151A, § 25 (b), as appearing in St. 1941, c. 685, § 1.

Employees at a Massachusetts assembly plant of a motor company were not "voluntarily" unemployed within G. L. (Ter. Ed.) c. 151A, § 25 (e) (1), as appearing in St. 1941, c. 685, § 1, where it appeared that they were members of an international labor union which had contracted with the company as sole bargaining representative of the employees at all the company's plants; that in the course of a labor dispute concerning the speed of assembly lines at Michigan plants of the company the international union approved a strike by its local unions at the Michigan plants involving among others employees engaged in manufacturing there; that no strike vote was taken at the

Massachusetts plant and no employee went from there to Michigan to participate in the strike; and that the unemployment of the employees at the Massachusetts plant was due solely to a shut down thereof forced by failure to receive assembly parts from one of the Michigan plants where the strike was in progress.

PETITION, filed in the District Court of Somerville on October 10, 1949, for review of a decision of the board of review in the division of employment security.

The case was heard by *Kolodny*, J.

*A. J. Santry*, (*A. J. Santry, Jr.*, with him,) for the petitioner.

*E. J. Nantoski*, Assistant Attorney General, & *F. F. Carmichael*, (*J. A. Brennan* with them,) for the respondents.

WILKINS, J.  The employer appeals from a decision of the District Court of Somerville affirming a decision of the board of review in the division of employment security of the department of labor and industries.  G. L. (Ter. Ed.) c. 151A, § 42, as appearing in St. 1943, c. 534, § 6, as amended by St. 1947, c. 434.  The board of review had affirmed a determination by the director that the claimants, "over three hundred in number," employed at the Ford Motor Company assembly plant in Somerville, are entitled to benefits for the period between May 10, 1949, and June 8, 1949, when there was a partial shut down due to failure to receive parts from Ford manufacturing plants in Michigan where there was a strike.

The issue involves the construction of G. L. (Ter. Ed.) c. 151A, § 25, as appearing in St. 1941, c. 685, § 1, which provides that "no benefits shall be paid to an individual under this chapter for . . . (b) Any week with respect to which the director finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he was last employed . . . ."[1]

---

[1] More fully quoted, § 25 reads: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for . . . (b) Any week with respect to which the director finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he was last employed; provided, that this subsection shall not apply if it is shown to the satisfaction of the

Ford Motor Company is engaged in the manufacture and assembly of automobiles, tractors, and trucks, which it sells under the trade names, Ford, Mercury, and Lincoln. Its main office and its principal manufacturing plant, known as the Rouge, are at Dearborn, Michigan. At the Rouge plant also, in "B Building" Ford and Mercury automobiles are assembled. Located throughout the country are assembly plants not devoted to manufacturing. One is at Somerville, where Ford automobiles and trucks are assembled. The Rouge and other Ford plants in Michigan supply Somerville with approximately sixty per cent of the "assemblies" and parts, which in normal operation are received daily by truck and train from Detroit. The remaining parts and materials are shipped by manufacturers upon orders from Dearborn. The main office decides the amount of assembling to be done in Somerville. A schedule is made in Dearborn, and instructions with a detailed chart of the automobiles to be assembled are sent to the Somerville plant. The Somerville manager has no authority to change this schedule.

The claimants are members of International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, UAW–CIO (affiliated with the Congress of Industrial Organizations), hereinafter called International, which had made a written agreement with Ford Motor Company. The International comprises many local unions at the various plants, among them being Local No. 901 at Somerville, Local No. 600 at the Rouge plant, and Local No. 900 at the Lincoln plant in Detroit. The International bargains for all the employees of Ford Motor Com-

---

director that — (1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and that (2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if, in any case, separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department may, for the purposes of this subsection, be deemed a separate factory, establishment or other premises. (3) For the purposes of this chapter, the payment of regular union dues or assessments shall not be construed as participating in or financing or being directly interested in a labor dispute."

pany (with exceptions not now material) in Michigan and elsewhere on such matters as rates of pay, wages, hours of employment, and many other conditions of employment. On March 11, 1949, the International notified Ford Motor Company that a labor dispute existed at "B Building" at the Rouge plant relative to the speed of the lines. Later a similar notice was served as to the speed of the line at the Lincoln plant. Failing an agreement, the International approved strike votes which had been taken by Locals No. 600 and No. 900, and on May 5, 1949, all union members at the Rouge and Lincoln plants ceased to work. Of the members of Local No. 600 at the Rouge plant, sixty thousand were engaged in manufacture.[1] The strike forced the closing of the Somerville assembly operations for a period of about four weeks. No strike vote was taken by Local No. 901.

The foregoing facts from the findings of the board of review or from the judge's report summarizing evidence introduced before the board are not in controversy. The decision of the board also contained the following: "There was no evidence that the employees in the Somerville plant participated in the labor dispute or in any way supported its objectives. It is admitted by all the parties that the reason the claimants were unemployed was that assembly parts were not coming to the Somerville plant due to the strike in the Dearborn plant. It therefore follows that the claimants' unemployment was due to a stoppage of work which existed because of a labor dispute. The issue, however, is whether the stoppage and the labor dispute were at the factory, establishment or other premises at which the claimants were last employed. . . . The appellant corporation contends that the word 'establishment' should be interpreted to mean a business where all of the departments of a company involve manufacturing operations which are inter-related and that, inasmuch as the Ford Motor Company is functionally an integrated unit, its plants, irrespective of how distantly separated, should be considered

---

[1] According to undisputed evidence before the board of review, there were approximately four thousand men in the Ford assembly plant at Dearborn.

as a single establishment." After analyzing § 25, quoted above, it was said, "the board does not consider that the word 'establishment' embraces all of the places of business of the Ford Motor Company, however functionally integrated they might be. It, therefore, follows that the claimants were not unemployed because of a stoppage of work due to a labor dispute at the factory, establishment, or other premises at which they were last employed."

1. The employer contends that "on the facts found by the board of review and on uncontradicted evidence before the board" the Somerville and Dearborn plants were "so functionally integrated that under the true intendment" of § 25 there was one "establishment" at which there was a labor dispute that caused a work stoppage and at which the claimants were last employed. This argument seeks to substitute a test of functional integration for the limited statutory disqualification which bars benefits to an individual only where there is "a stoppage of work . . . because of a labor dispute at the factory, establishment or other premises at which he was last employed." The board of review in substance has found that there was no labor dispute at the Somerville plant. This must stand unless as matter of law the labor dispute at Dearborn, which caused the stoppage of work at Somerville, occurred at the same "factory, establishment or other premises." *Wagstaff* v. *Director of the Division of Employment Security*, 322 Mass. 664, 665. *Farrar* v. *Director of the Division of Employment Security*, 324 Mass. 45, 48. *Moen* v. *Director of the Division of Employment Security*, 324 Mass. 246, 247.

We are of opinion that the finding of the board was in accordance with the requirements of the statute. A "factory" has been defined as a building or group of buildings, usually in the same immediate neighborhood, devoted to the manufacture of articles or commodities. *Di Santo* v. *Brooklyn Chair Co.* 140 App. Div. (N. Y.) 119, 120; affirmed 205 N. Y. 538. *Schott* v. *Harvey*, 105 Pa. 222, 227–228. It is not contended that the Somerville plant was part of the same factory as the Rouge plant in Dearborn. See *General*

*Motors Corp.* v. *Mulquin,* 134 Conn. 118, 126. It is, however, seriously urged that the Somerville plant was part of the same "establishment." But, here again,` the word "establishment," as normally used in business and in government, means a distinct physical place of business. *A. H. Phillips, Inc.* v. *Walling,* 324 U. S. 490, 496. And the remaining words "or other premises" also denote a distinct and definite locality. *Robinson* v. *State,* 143 Miss. 247, 259. See *Meucci* v. *Gallatin Coal Co.* 279 Pa. 184, 186. The statute, accordingly, impresses us as laying stress upon geographical location rather than upon a combination of widely scattered plants used for the business operations of one employer. We cannot read into § 25 any provision as to functional integration. If we could, we would not understand on what ground its scope could be restricted to plants used for the business operations of only one employer. The employer's argument rests upon a construction of "establishment" which is so broad as to devour entirely, and leave no additional scope for the words "factory . . . or other premises." We think that "establishment" is meant to embrace premises, not aptly described as a factory, where labor is performed — and without attempting to name them all — such as stores, banks, theatres and ` other places of amusement, laundries, garages, hotels, restaurants, office buildings, shipyards, newspaper and printing offices, insurance buildings, express and transportation buildings, repair shops, telephone and telegraph offices, and barber and hairdressing shops.

The history of § 25 tends to support our construction. The original c. 151A, § 19 (a), inserted by St. 1935, c. 479, § 5, read: "No benefits shall be paid to an employee under this chapter for any week in which his unemployment is directly due to a strike, lockout or other trade dispute still in active progress in the establishment where he was last employed." In the second and final report of the special commission appointed to make an investigation of unemployment insurance, reserves and benefits, which recommended this legislation, it was said (1935 House Doc. No.

2225, page 8), "Disqualifications. — Out of work because of a strike, etc., still in active progress at the place where the employee last worked . . . ." In a complete revision, of c. 151A, as appearing in St. 1937, c. 421, § 1, this disqualification was expressed in § 16 (b) in substantially the same form as at present, and there appeared for the first time the phrase "unemployment . . . due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he was last employed." The revision (1937 House Doc. No. 1444) was introduced on the petition of the unemployment compensation commission, which reported (1937 Mass. Pub. Doc. No. 104, pages 176–177) the major changes. The amendment of the section with which we are concerned is not expressly mentioned. The commission concluded by saying, "The remaining revisions in the law were, for the most part, perfecting and were made in order to simplify the actual application of the provisions of the law" (page 177). From this history we deduce that in c. 151A, as enacted in 1935, "establishment" meant "place of employment"; and that in this respect no change was intended by the longer expression, "factory, establishment or other premises," introduced in 1937. See *Nordling* v. *Ford Motor Co.* 231 Minn. 68, 76. The precise phraseology now found in § 25 (b) dates from another complete revision of c. 151A, as appearing in St. 1941, c. 685, § 1.

Brief reference will be made to the law of other States which has been cited to us. First, in the statutes, the labor dispute disqualification of an individual is phrased in either of two ways: more commonly, (1) "the factory, establishment or other premises" at which he was employed (as in § 25); or (2) "the establishment" at which he was employed (as in the original provision of c. 151A, inserted by St. 1935, c. 479, § 5). See 49 Columbia L. Rev. 550, 556, notes 34, 35. There have been three cases in courts of last resort arising out of the labor dispute with which we are concerned. Two of the decisions were favorable to the award of benefits to individuals employed at local plants who experienced a

stoppage of work in consequence of the strike at the Michigan plants. *Nordling* v. *Ford Motor Co.* 231 Minn. 68. *Ford Motor Co.* v. *New Jersey Department of Labor & Industry,* 5 N. J. 494. In the third the claimants were unsuccessful. *Ford Motor Co.* v. *Abercrombie,* 207 Ga. 464. Other decisions in courts of last resort are distinguishable. Some contain language tending in some respect to support the claimants. *Tennessee Coal, Iron & R. Co.* v. *Martin,* 251 Ala. 153 ("establishment"). *General Motors Corp.* v. *Mulquin,* 134 Conn. 118 ("factory, establishment or other premises"). *Tucker* v. *American Smelting & Refining Co.* 189 Md. 250 ("factory, establishment or other premises"). See *Walgreen Co.* v. *Murphy,* 386 Ill. 32 ("factory, establishment or other premises"). On the other hand, cases in two courts which denied benefits, although arising under the "establishment" form of statute, may in their implications be opposed to the claimants. *Chrysler Corp.* v. *Smith,* 297 Mich. 438. *Chrysler Corp.* v. *Unemployment Compensation Commission,* 301 Mich. 351. *Spielmann* v. *Industrial Commission,* 236 Wis. 240.

Our conclusion on this branch of the case is that no error has been shown in the failure to find that the Somerville and Dearborn plants were one "establishment."

2. The employer further contends that the claimants' unemployment was voluntary, because, by reason of their membership in the International, which was the sole bargaining representative of the workers in all the Ford plants, they participated in, were directly interested in, and supported the objectives of the labor dispute which caused their unemployment. This argument is founded upon G. L. (Ter. Ed.) c. 151A, §§ 24 (b),[1] 25 (e),[2] as appearing in St. 1941, c. 685, § 1.

---

[1] "Section 24. An individual, in order to be eligible for benefits under this chapter, shall . . . (b) Be capable of and available for work and unable to obtain work in his usual occupation or any other occupation for which he is reasonably fitted."

[2] "Section 25. . . . no benefits shall be paid to an individual under this chapter for . . . (e) The period of unemployment next ensuing after an individual has left his employment; ·(1) Voluntarily without good cause attributable to the employing unit or its agent."

326 Mass. 757                                               765

Ford Motor Co. *v.* Director of the Division of Employment Security.

The employer conceded before the board of review that no strike vote was taken at Somerville; that no one at that plant went to Michigan to participate in the strike by picketing, or otherwise; that the claimants were ready to work; and that their work ceased by reason of the shut down due to the failure to receive parts. Because of these concessions the Attorney General takes the position that the contention presently being considered is not open. However this may be, we are of opinion that §§ 24 (b) and 25 (e) (1) do not disqualify the claimants. Section 24 (b) does not apply. The claimants were capable of and available for work at the Somerville plant, and there is no finding or contention that work was obtainable elsewhere and refused.

The argument under § 25 (e) (1) runs in this fashion: The claimants, members of Local No. 901, were bound by the acts of the International, which approved the strike votes by Locals No. 600 and No. 900, which resulted in the stoppage of work at the Somerville plant. "The claimants and all assembly workers of the company were directly interested in the outcome of the dispute . . . . In every act taken by the International, its officers and bargaining committee, the claimants participated. Through the activities of their agents the claimants were supporting the objectives of the strike which sought a change in the speed of the assembly lines, and if this was accomplished it would be applicable to Somerville and all the other assembly plants of the company."

The employer relies upon *Moen* v. *Director of the Division of Employment Security*, 324 Mass. 246, where a claimant was held to be bound by the terms of a contract executed by the union with the employer. In the case at bar it is not sought to impose upon the claimants, against their will, the terms of any contract executed on their behalf, but rather to disqualify them, under a contract the binding effect of which they do not question, from receiving benefits because of acts of the International taken ostensibly on behalf of other locals over which the claimants had no control. The claimants were ready to work, but, it is urged, are dis-

qualified because of the acts undertaken by their agent, in which, it is said, they would benefit, albeit that agent was acting for others. If the claimants are to be denied an award on the grounds alleged, it would be necessary to send the case back to the board for additional findings. This, however, we think is not necessary, because, on the evidence, the board could not find facts showing that the claimants were unemployed "Voluntarily without good cause attributable to the employing unit or its agent."

We hold to the view that the Legislature did not intend that claimants should be barred from benefits by reason of membership in an international union in these circumstances. In § 25 (b), quoted in a footnote at the beginning of this opinion, are given what we believe are all the grounds on which a claimant can be barred because of his relationship to a work stoppage due to a labor dispute. In this section are certain provisos relating to participation and direct interest. These do not come into operation, however, until it is shown that the stoppage of work "exists because of a labor dispute at the factory, establishment or other premises" where last employed. This, as we have seen, is not the case here.

Arguments as to the alleged economic unsoundness of this result must be addressed to the Legislature and not to us.

3. The decision of the District Court, affirming the decision of the board of review and dismissing the petition, is affirmed.                                    *So ordered.*