ANTHONY ADOMAITIS & others *vs.* DIRECTOR OF THE DIVISION
OF EMPLOYMENT SECURITY & another.

Worcester.   March 7, 1956. — August 7, 1956.

Present: QUA, C.J., RONAN, WILKINS, COUNIHAN, & WHITTEMORE, JJ.

*Employment Security,* Stoppage of work through labor dispute.   *Labor.*
*Words,* "Labor dispute," "Stoppage of work."

On findings that during extended negotiations between the proprietor of
a wool processing plant and a union respecting a wage cut the union
posted a notice for stopping "all work" on a specified date, although
no strike then occurred by reason of a temporary extension of the ex-
isting contract between the proprietor and the union, and that be-
cause of fears of a prolonged strike the customers of the plant ceased
sending wool to it for processing and withdrew some already there,
with the result that for a short period there was a substantial curtail-
ment of available work and, although a share-the-work plan was put
in operation, a few employees had no or little work and filed claims
for benefits under the employment security law, G. L. (Ter. Ed.)
c. 151A, conclusions were proper that the claimants' unemployment
during such period was "due to a stoppage of work . . . [existing]
because of a labor dispute at" the plant within § 25 (b), as appearing
in St. 1941, c. 685, § 1, as amended by St. 1953, c. 464, and that they,
not being within any of the exemptions from disqualification provided
in (b), must be denied the benefits sought.

PETITION, filed in the Central District Court of Worcester
on December 17, 1954, for review of a decision by the board
of review in the division of employment security.

The case was heard by *Goldberg,* J.

*Harold B. Roitman,* for the petitioners.

*James S. Gratton,* for Barre Wool Combing Company, Ltd.

*George Fingold,* Attorney General, *Lazarus A. Aaronson &*
*Stephen F. LoPiano, Jr.,* Assistant Attorneys General, sub-
mitted a brief.

WHITTEMORE, J.   These appeals present questions under
G. L. (Ter. Ed.) c. 151A, the employment security law.   The
petitioners, employees of the respondent Barre Wool Comb-

ing Company, Ltd. (Barre), appeal from the decision of a special justice of the Central District Court of Worcester sustaining a decision of the board of review which denied to the petitioners unemployment compensation benefits claimed for the period from April 22, 1954, to April 30, 1954. Barre appeals from the denial of its motion to dismiss the petitioners' appeal because not filed "within five days after notice of such decision" under G. L. (Ter. Ed.) c. 151A, § 42, as appearing in St. 1943, c. 534, § 6, as amended by St. 1947, c. 434.

As we find no error in the decision of the District Court judge sustaining the decision of the board it is unnecessary to consider Barre's appeal.

The statute (§ 25 [b], as appearing in St. 1941, c. 685, § 1, as amended by St. 1953, c. 464), denies benefits to an employee for "Any week with respect to which the director finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory . . ." with certain exemptions provided in subsections (1), (2), and (4), which are not in issue here. Section 42 provides that "In any proceeding under this section the findings of the board of review as to the facts, if supported by any evidence, shall be conclusive, and the court shall render a decision or decree in accordance with such findings."

The board of review found that "The claimants' unemployment . . . was due to a labor dispute work stoppage and . . . they do not meet the requirements of subsections (1) and (2) . . . under which they would be exempt from the disqualification." The board also found that the union contract for Barre's union shop employees was to expire March 15, 1954, if either side gave sixty days or more termination notice; that Barre gave such notice; that negotiations in respect of Barre's request for a fifteen cents across-the-board wage cut began in December, 1953; that the existing contract was on three occasions extended to the respective dates April 1, April 12, and April 20, 1954; that prior to April 20 the union posted notice that "all work . . . will stop as of 12:01 A.M. April 21, 1954"; that on

April 20, about 8 P.M. the contract was again extended to
May 17, 1954; and that on May 17 it was extended again
to May 31, 1954, and on May 31, 1954, a strike was called
which continued through June 14, 1954, when "after some
modification in the 15¢ per hour cut an agreement was
signed and the employees returned to work."

Further findings were that Barre processed wool owned by
its customers; that the customers kept closely in touch
with Barre during negotiations, feared that in the event of a
prolonged strike they would be unable to meet their com-
mitments because their material would be frozen on Barre's
premises and therefore, as the deadline for termination of
the contract neared, ceased sending wool and removed some
of their wool in the plant; that on April 20 the plant con-
tained about fifteen per cent of its normal operating in-
ventory; that after the April twentieth extension the cus-
tomers sent in more wool as fast as they could, but that
between April 19 and 23 there was a drop of about thirty-
five per cent from normal production; that since there was
not enough wool to keep all employees producing Barre in-
voked the share-the-work plan with staggered days off so
that most employees had some work; that those who had
no work or did not earn the equivalent of their benefit rate
filed the claims here most of which involve about one week;
that "the 35% cut in man hours worked is a substantial
stoppage"; and that, contrary to the findings of the director,
Barre had the orders from customers for normal work levels,
but not the materials on hand for the reasons stated.

Plainly the unemployment for which claims are made was
due to a cause which existed "because of a labor dispute."
Granting, for the argument, that the area of meaning in-
cluded in the words "labor dispute" may vary in different
statutes, depending on their purposes (*Simon* v. *Schwach-
man*, 301 Mass. 573, 579; *Unemployment Compensation
Commission of Alaska* v. *Aragon*, 329 U. S. 143, 150–151)
and that the purpose of the employment security statute is
such that a narrower interpretation of the words may be in-
dicated than for other statutes (49 Yale L. J. 461, 475) a

dispute over wages which either or both parties deem so fundamental that they will invoke economic sanctions if their views do not prevail, vouched as such by a strike in fact called and had, is a labor dispute, as the board has said "under any definition" of the words. See *Local Union No. 11* v. *Gordon*, 396 Ill. 293; *Amory Worsted Mills, Inc.* v. *Riley*, 96 N. H. 162; *Mortensen* v. *Board of Review*, 37 N. J. Super. 236; *Ablondi* v. *Board of Review*, 8 N. J. Super. 71; *Adkins* v. *Indiana Employment Security Division*, 117 Ind. App. 132; *Sandoval* v. *Industrial Commission*, 110 Colo. 108. The wording of the section corresponding to § 25 (b) prior to the amendment of the act by St. 1937, c. 421, § 1 (§ 19 [a], as inserted by St. 1935, c. 479, § 5 — " . . . unemployment is directly due to a strike, lockout or other trade dispute still in active progress in the establishment where he was last employed"), may confirm a restricted meaning for "labor dispute," but in any event a meaning which would include what was going on here. Compare G. L. (Ter. Ed.) c. 149, § 20C (c), as appearing in St. 1950, c. 452, § 2; c. 150A, § 2 (7), inserted by St. 1938, c. 345, § 2; c. 150B, § 2, inserted by St. 1947, c. 596. The finding that "If there had been no dispute over the wage cut, there would have been no withdrawal of the wool from the plant and the deliveries would have continued normally and normal production would have been maintained" is fully supported by the evidence.

The parties assert that the word "work" in the phrase "stoppage of work" refers to work and operations of the employer and not to the work of individual employees. *Lawrence Baking Co.* v. *Unemployment Compensation Commission*, 308 Mich. 198, certiorari denied 323 U. S. 738. 28 A. L. R. (2d) 320–321. What happened here was a general reduction of work in the plant, and we do not reach the question of whether individual or group refusals to work which do not diminish the work done in the plant can in any circumstances be work stoppages. See *Board of Review* v. *Mid-Continent Petroleum Corp.* 193 Okla. 36, and cases noted in 28 A. L. R. (2d) 321–322. We hold that the words

"stoppage of work" have a wider meaning than "strike" or "lockout" even though sometimes used as a euphemism for these harsher terms. We think the board was right in holding in effect that where a labor dispute blocks a substantial amount of work which would otherwise be done it has stopped that much of the work and there is therefore a "stoppage of work which exists because of a labor dispute."

The petitioners accept the view that something less than a closed plant can constitute a work stoppage (28 A. L. R. [2d] 322; 49 Yale L. J. 484), but contend that the critical point has not been reached here. The petitioners say: "This rule raises a question of the percentage of curtailment of business activity which is necessary . . ." and "no cases have reached the point to which the respondent desires to stretch the rule in the instant case where only $2\frac{1}{2}\%$ of the employees were qualified for even partial unemployment compensation benefits" and "there was never at any time any work available for these employees which they voluntarily stopped performing." The findings show that the substantial curtailment affected so few employees only because of the staggering of the work. If voluntary action by the employees in respect of the stoppage is necessary, and we intend no suggestion, it came in this case, not in their refusal to do work laid before them, but in electing to authorize a strike, and, through their authorized agents, calling it. The notice operative until 8 P.M. on April 20 clearly said to wool owning customers, "We will not work on your wool if you ship it in," and directly caused the wool to be withheld and the work to be unavailable. We think that the facts meet the definition of the petitioners' brief, which, they say, sums up British interpretations of similar language, that is: "where work is available which the unemployed claimant would be doing but for a trade dispute, there is a stoppage of work." *Mortensen* v. *Board of Review*, 37 N. J. Super. 236; compare, however, *Gulf Atlantic Warehouse Co.* v. *Bennett*, 36 Ala. App. 33. As noted, under the corresponding section to § 25 (b) in its form prior to the 1937 amendment benefits were denied for "unemployment . . .

directly due to a strike, lockout or other trade dispute
. . . ." This clearly did not limit the exclusions to cases
where all work had stopped, and the change in language is
not such as to make manifest a purpose to change the basic
intent of the act in this respect. The legislative history does
not disclose such a purpose. *Ford Motor Co.* v. *Director of
the Division of Employment Security,* 326 Mass. 757, 762–763.

If the stoppage is because of the underlying labor dis-
pute at the place of employment (*Ford Motor Co.* v. *Director
of the Division of Employment Security,* 326 Mass. 757) the
statutory requirements are met regardless of whose act
immediately precipitates the stoppage and when it occurs
in relation to a strike or other economic sanction. *Bako
Unemployment Compensation Case,* 171 Pa. Super. 222.
*Carnegie-Illinois Steel Corp.* v. *Review Board of Indiana
Employment Security Division,* 117 Ind. App. 379. *Depart-
ment of Industrial Relations* v. *Savage,* 82 So. (2d) 435. *In
re Stevenson,* 237 N. C. 528. *Climax Fire Brick Co.* v.
*Unemployment Compensation Board of Review,* 166 Pa.
Super. 481. *Chrysler Corp.* v. *Review Board of Indiana
Employment Security Division,* 120 Ind. App. 425. *Saunders
v. Maryland Unemployment Compensation Board,* 188 Md.
677.

*Decision of the District Court affirmed.*