No. 43,286

ROBERT E. PICKMAN, et al., *Appellees,* v. L. M. WELTMER, R. F. OLBERDING and SID CALBERT, as members of the Employment Security Board of Review of the State of Kansas and THE L. F. M. MFG. CO., INC., *Appellants.*

(382 P. 2d 298)

 Opinion
filed June 8, 1963. 

*Lynn D. Smith,* of Topeka, argued the cause, and *F. Duane Roberts,* of Topeka, was with him on the briefs for Appellant, Employment Security Board of Review. *John E. Buehler,* of Atchison, was on the briefs for Appellant, The L. F. M. Mfg. Co., Inc.

*J. W. Lowry,* of Atchison, argued the cause, and *Steadman Ball, William E. Stillings* and *Robert D. Caplinger,* of Atchison, were with him on the briefs for Appellees.

The opinion of the court was delivered by

FATZER, J.: This appeal involves the eligibility of twenty-four individual appellee-claimants for unemployment insurance benefits under the provisions of the Kansas Employment Security Law (G. S. 1949, 44-701 *et seq.,* as amended), and particularly G. S. 1961 Supp., 44-706 (*d*).

The individual appellees were employees of The L. F. M. Mfg. Co., Inc., hereafter referred to as the company. During all periods here involved they were represented for the purpose of collective bargaining by the United Steelworkers Union, which was certified by the National Labor Relations Board as the bargaining unit for all the employees of the company.

Prior to October 9, 1961, the company and the union had been negotiating concerning the terms of a collective bargaining agreement. On October 9, 1961, a strike was called and pickets were posted. On Saturday morning, October 21, 1961, the company received a letter from the union advising that it was removing the pickets and the employees would return for work on Monday, October 23, 1961, unconditionally. On October 23, 1961, all employees who had been out on strike were asked by the company to sign to unconditionally return to work, and on that date it began calling employees to work. The services of substantially all the 700 employees could not be utilized on that date, but all were recalled to work by November 17, 1961. As of November 6, 1961, all the employees had been recalled to work except thirty, including fourteen of the claimants.

The company is a steel and iron foundry and normal production process in the plant is divided into five basic departments, and the production in each phase of the operation is dependent upon the

production in the preceding department, that is, it is a kind of production where the second operation is dependent upon the first and cannot be performed until after the first is performed, and the third is dependent upon the first and second, and so forth. The evidence was undisputed that normal production of an item through all stages requires about five weeks. The claimants were employed in the machine shop which is the last phase of production in the plant. Until normal operations were resumed in the proper phases of production so that the flow of items manufactured could reach the machine shop, normal work could not be provided for the employees of that department. The claimants did not all return to work on the same date but were recalled on different dates between October 30, and November 17, 1961, on the basis of work seniority and ability to perform work which they normally did and which was then available.

Each claimant filed a claim for unemployment insurance benefits for the period of his unemployment subsequent to October 23, 1961. A special examiner made findings that "because of the nature of the manufacturing operation at this employer's plant the stoppage of work did not cease until on or about November 6, 1961"; that "the stoppage of work which continued during the period from October 23, 1961, through November 4, 1961, was the direct result of a labor dispute," and concluded that the claimants were disqualified for benefits for any calendar week of unemployment occurring during that period as provided in G. S. 1961 Supp., 44-706(d).

The claimants appealed from the examiner's determination to the Employment Security Board of Review. After a hearing at which testimony was taken, the Board, on April 19, 1962, entered its decision that the unemployment of claimants after October 23, 1961, was due to a labor dispute, and denied benefits.

The claimants sought judicial review in the district court pursuant to G. S. 1961 Supp., 44-709(h), and the court, upon a consideration of the record and argument of counsel, found,

"That there is no evidence to support the finding of the special examiner or the Board of Review to the effect that the stoppage of work at the plant of the L. F. M. Mfg. Company did not cease until on or about November 6, 1961.

"The Court further finds that the pleadings herein presented a question of law as to the applicability of G. S. 1961, Supp. 44-706(d). In this connection the Court finds:

"That the stoppage of work that existed at the plant of the defendant

L. F. M. Mfg. Company, Inc. ceased on October 23, 1961, as the said work stoppage should be construed under said section of the statute.

"The Court further finds that the decision of the Board of Review, dated 19 April 1962, should be reversed and an order entered in accordance with the above finding."

The parties concede that a stoppage of work existed at the company's plant because of a labor dispute between October 9, and October 23, 1961, and make the following contentions: The appellants contend that the stoppage of work and claimants' resulting disqualification did not end until there had been a resumption of normal production at the plant, even though there had been an earlier termination of the strike; further, that although the labor dispute had ended, where there is a necessary delay in a particular department which is due to operation methods adopted by the company because they produced the best results for its type of production, such delay results directly from the labor dispute even though employees in other departments were recalled at an earlier date. The claimants contend, on the other hand, that, as a matter of law, G. S. 1961 Supp., 44-706(d) applies only to the time an actual "labor dispute" exists which causes a "work stoppage," and that there was no evidence presented which showed a real work stoppage except from October 9, through October 23, 1961, when the claimants signed the company's roster to unconditionally return to work. Hence, the sole question presented for appellate review is, did the stoppage of work end when the pickets were removed and the striking workers offered to return to work on October 23, 1961, or did the stoppage of work continue until the claimants were recalled to work in the orderly resumption of normal production of the plant?

The pertinent portion of G. S. 1961 Supp., 44-706 reads:

"An individual shall be disqualified for benefits: . . . (d) For any week with respect to which the commissioner finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed. . . ."

At the outset, we note all the parties are agreed that there was no evidence to support the special examiner's finding that "the stoppage of work did not cease until on or about November 6, 1961." The appellants are not here on appeal from that determination. They have appealed from the district court's judgment reversing the decision of the Board of Review which made findings of fact, the pertinent portion of which reads:

"The evidence is clear that both 'a stoppage of work' which did occur as a result of 'a labor dispute' within the meaning of statute existed and is not in contention. Further, the parties do not dispute the fact that the strike commenced October 9, 1961, and terminated by notice to the employer on October 21, 1961. The major point in contention is whether the claimant's unemployment after October 21, 1961, was due to the labor dispute."

. . . . . . . . . . . . .

"In the instant case, the record clearly shows that the unemployment was most directly attributable to a lack of available work for the claimants; that in turn the lack of available work was due only to the interruption of the normal flow of goods through the production process; and that the interruption of the normal flow of goods through the production process was due to the labor dispute. Thus by the normal reasoning processes, and in particular in view of the fact of the lack of evidence of any other intervening factors, we can only conclude that the unemployment in the instant case was due to a stoppage of work as a result of the labor dispute."

The foregoing is a finding of fact and under G. S. 1961 Supp., 44-709 (h), where a claimant seeks judicial review, findings of fact of the Board of Review are conclusive and may not be set aside by the district court in the absence of fraud where they are supported by evidence, and the jurisdiction of the court is confined to questions of law. (*Shumaker v. Kansas State Labor Dept.*, 154 Kan. 418, 118 P. 2d 550; *Craig v. Kansas State Labor Commissioner*, 154 Kan. 691, 121 P. 2d 203; *Read v. Warkentin, Commissioner*, 185 Kan. 286, 341 P. 2d 980; *Clark v. Board of Review Employment Security Division*, 187 Kan. 695, 359 P. 2d 856.) Those cases embrace the rule that judicial review must be made in the light most favorable to the findings and holding of the administrative tribunal. (81 C. J. S., Social Security and Public Welfare, § 232, pp. 341-349.)

A reading of the record of this appeal reveals there was ample evidence to support the findings of fact made by the administrative board. There is no suggestion of fraud. Hence, the findings of the Board of Review were conclusive on appeal to the district court and in this court. Moreover, and contrary to the conclusion of the district court, the decision of the Board of Review denying benefits is not to be construed as one which merely affirmed the decision of the special examiner, but is to be regarded as a finding of fact that the stoppage of work and the resulting unemployment was attributed to the labor dispute which extended to the time the claimants were recalled to work.

In light of the findings of fact of the Board of Review, did the district court correctly interpret and apply G. S. 1961 Supp., 44-706 (d)? This court has not previously construed the statute, but the

highest courts of other states which have considered statutes similar to or identical with it, establishing ineligibility for benefits where the unemployment is due to a stoppage of work as the result of a labor dispute, have universally held that the claimant remains ineligible for benefits during the entire period of his unemployment even though a period of time is required after the settlement of the dispute for the employer to resume normal operations. (*Magner v. Kinney*, 141 Neb. 122, 2 N. W. 2d 689; *In re Stevenson*, 237 N. C. 528, 75 S. E. 2d 520; *Lawrence Baking Co. v. Unempl. C. C.*, 308 Mich. 198, 13 N. W. 2d 260; *American Steel Foundries v. Gordon*, 404 Ill. 174, 88 N. E. 2d 465; *Chrysler Corp. v. Review Bd., Emp. Sec. Div.*, 120 Ind. App. 425, 92 N. E. 2d 565; *Bako Unemployment Compensation Case*, 171 Pa. Super. 222, 90 A. 2d 309; *Saunders v. Unemp. Comp. Board*, 188 Md. 677, 53 A. 2d 579; *Adomaitis v. Director of the Division of Employment Security*, 334 Mass. 520, 136 N. E. 2d 259.) However, the stoppage of work caused by a labor dispute must not exceed the time which is reasonably necessary, and required, to physically resume normal operations in the factory, plant or establishment. (*Carnegie-Ill., etc. v. Review Board, etc.*, 117 Ind. App. 379, 72 N. E. 2d 662.)

The authorities are unanimous that it is not essential that the stoppage of work and the labor dispute exist concurrently. The decisive test is whether the labor dispute caused the work stoppage. (*Blakely v. Review Bd. Emp. Sec. Div.*, 120 Ind. App. 257, 90 N. E. 2d 353.) The term "stoppage of work" is not synonymous with "strike" (*Saunders v. Unemp. Comp. Board*, supra), and where, because of the nature of, or the method of conducting the business of the employer, there is no work for an employee during the period immediately following the strike and until other departments have begun to produce, the employee is not entitled to benefits for such period, his unemployment having been due to a stoppage of work because of a labor dispute. (*Ablondi v. Board of Review*, 8 N. J. Super. 71, 73 A. 2d 262; *Saunders v. Unemp. Comp. Board*, supra; *Adomaitis v. Director of the Division of Employment Security*, supra.) In *Buzza v. Unemp. Comp. Com.*, 330 Mich. 223, 47 N. W. 2d 11, it was held that employees of a particular department were disqualified to receive benefits until the resumption of normal operations in such department began, even though the strike terminated prior thereto and even though employees in another department were recalled at an earlier date, where the delay was necessary under the circumstances.

Generally speaking, and with certain exceptions not here material, the benefits of the Employment Security Law are denied only when the unemployment is due to a labor dispute. Where unemployment is originally caused by a labor dispute, before an employee will be entitled to the benefits of the Act, he has the burden of proving that his continued unemployment is not the result of the labor dispute, but is caused from some other condition beyond his control. Whether it is, or whether it is not, is a question to be determined in each case. The line of demarcation is not the end of the strike, but the end of the work stoppage due to the strike. That test is applied to all alike, and there is no discrimination. (*In re Stevenson*, supra; *Carnegie-Ill., etc. v. Review Board, etc.*, supra; *Employees of Utah Fuel Co. v. Ind. Comm. of Utah et al.*, 99 Utah 88, 104 P. 2d 197; *Chrysler Corp. v. Review Bd. Emp. Sec. Div.*, supra.) Here, there is nothing in the record to show that the stoppage of work in the company's plant exceeded the time reasonably necessary to resume normal operations in the chain process method of production in the plant, or that the company acted in an arbitrary or capricious manner in recalling the employees.

While the beneficent provisions of an unemployment compensation act should receive a liberal construction in favor of those claiming benefits under it (81 C. J. S., Social Security and Public Welfare, § 96, pp. 138-140), and provisions for disqualification of an employee from those benefits should be narrowly construed, as constituting an exception to the act, and in order that an employee may be disqualified thereunder the facts must come within the clear meaning of the words used in the provisions. (81 C. J. S., Social Security and Public Welfare, § 98, p. 142.) In applying that rule, it is sufficient to say that we are of the opinion the findings of fact of the Board of Review bring the claimants clearly within the provisions of G. S. 1961 Supp., 44-706 (*d*), and that those findings were supported by the evidence. As we have seen, the decisions of courts of last resort which have considered the question are nearly, if not entirely, unanimous in their holdings that a stoppage of work ceases when the operations are resumed on a normal basis.

In accordance with the conclusions heretofore announced, we hold that the claimants were disqualified for unemployment compensation benefits.

The judgment of the district court is reversed.