S. H. H. CLARK ET AL., RECEIVERS OF THE UNION PACIFIC RAILWAY COMPANY, APPELLANTS, V. HENRY NEUMANN ET UX., APPELLEES.

FILED OCTOBER 20, 1898.　No. 8365.

1. **Separate Contracts:** ENFORCEMENT OF VENDOR'S LIEN. Four separate and complete written agreements, contemporaneously executed, claiming no relationship with one another, and each evidencing the sale of one-quarter of a certain section of land, cannot, in an action to enforce a vendor's lien, be treated as interdependent parts of a single, indivisible contract.

2. **Land Contract:** FORFEITURE: WAIVER. An attempted forfeiture of a land contract will not be effective when both parties subsequently deal with the contract and the land as though there had been no rescission.

3. ———: ENFORCEMENT OF VENDOR'S LIEN: TENDER. In an action on land contracts to enforce a vendor's lien an alleged tender by the defendant should be kept good by bringing the money into court.

4. **Equity:** FINDINGS AND DECREE. The findings and decree in an action in equity should respond to all the material issues presented by the pleadings.

APPEAL from the district court of Cheyenne county. Heard below before NEVILLE, J. *Reversed.*

*W. R. Kelly* and *E. P. Smith*, for appellants.

*J. L. McIntosh, contra.*

SULLIVAN, J.

This action was commenced in the district court to foreclose four land contracts executed by the Union Pacific Railway Company to Henry Neumann on July 17, 1884. From a decree in favor of the defendants the plaintiffs have appealed. Each of the contracts in suit was for one-quarter of section 31, in township 14 north, of range 47 west of the sixth principal meridian, being in Cheyenne county, in this state. The contracts covering the north half of the land were numbered, respectively, 78084 and 78085; the others were numbered 78086 and 78087. It seems that the north half of the section is, and was at the time of the sale, much more valuable than the south half; and that the railroad company, with the view of making a single sale of the entire tract, fixed its average value at $5 per acre. Whether Neumann was informed of this fact at the time he purchased the land does not appear, as there is in the record no evidence of any negotiations preceding the execution of the contracts. It is shown, however, by his admission that he could not have bought the north half of the section without buying the south half.

The contention of the receivers is that there was but one transaction between the parties, and that the several written agreements executed by the company to Mr. Neumann are interdependent parts of a single, indivisible contract. The difficulty with this position is that the contracts claim no relationship with one another. Whatever may have been the reason for dividing the transaction into four separate and distinct parts it is entirely certain that such division has been made. Each contract, under the issues of this case, is the exclusive evidence of the rights and obligations of the parties re-

sulting from the sale of 160 acres of land. No one of the contracts contains any reference to any of the others. Each fixes the price of the quarter section therein described, imposes on the purchaser the duty of paying the same in ten equal annual installments, reserves to the company the right of forfeiture for non-payment, and provides for the delivery of a deed of conveyance when the full consideration has been paid. The contracts themselves are the best and only competent evidence of the intention of the parties. Had the company intended to reserve a vendor's lien on all the land as security for the entire purchase-money, it is reasonable to suppose the evidence of that purpose would have appeared in the contracts. To charge the north half of the section with the amounts delinquent on the contracts for the south half would, doubtless, accomplish substantial justice between the parties, but it could not be done without disregarding their express agreement and releasing the company from its stipulation to make a deed of conveyance for each quarter section as soon as the consideration therefor should be paid. The fact that the company would not have sold Neumann the north half had he not purchased the south half at the same time, affords no evidence, competent or incompetent, of an understanding that the unpaid purchase-money should be a general lien on the whole tract. The inference is that the company was satisfied with the security for which it contracted. If the south half of the section was not adequate security for the part of the purchase price apportioned thereto, it may be that the personal responsibility of the purchaser was relied on in severing the transaction. But it is needless to speculate in regard to this matter. The parties have made their own engagements and put them in writing. They must now abide by them. After July 17, 1885, Neumann made no payments on the contracts covering the south half of the section, but the payments on the other contracts were punctually made and were received by the company up to, and including, the in-

stallment which became due in 1892. In 1887, and again in 1891, the company notified Neumann that under the operation of a forfeiture clause contained in each of the contracts, his rights under the contracts covering the south half of the land had become forfeited, but that the forfeiture would be waived in case the amounts delinquent were paid within thirty days. This conduct on the part of the company is pretty conclusive evidence that it did not at that time consider the separate agreements as part of one indivisible contract. The defendants assign to it a more serious consequence. They insist that it terminated Neumann's rights in the lands mentioned in the notice of forfeiture, and that the equitable title thereto reverted to and revested in the Union Pacific Railway Company. If this is true, the action to foreclose these contracts cannot be maintained. When Neumann bought the land he inclosed it in one body and used it for pasturage. In 1891 or 1892, it is not clear which, he removed the fences inclosing the south half of the land and rebuilt them about ten feet south of the division line between the north half and the south half of the section. This fence had five gateways, usually open, through which Neumann's cattle would occasionally pass and graze on and range over the south half of the section. He was also accustomed to drive his cattle across this land in taking them to and bringing them back from his grazing lands in Colorado.

In September, 1891, after the service of the second notice of forfeiture, Mr. Lunger, an agent of the company, called on Neumann and urged him to pay up the amounts delinquent on the contracts 78086 and 78087. Neumann stated that he could not do so at that time, but that the contracts were in the hands of his agent at Denver to sell, and in case a sale was made he would settle the arrearage. Upon these facts we think the defendants are not in an attitude to insist that there was an effectual rescission of the contracts. They were treated by both parties as being in full force and effect. The

company recognized their validity and waived the right
of forfeiture by attempting to enforce them; and Neu-
mann, by using the land and attempting to dispose of it
as his own, asserted an interest and ownership which he
may not now repudiate.  He contends, however, that
having acted on the company's notice that the contracts
were rescinded,—having removed the fence and refrained
from using the land,—the doctrine of estoppel precludes
the plaintiffs from showing a waiver of the forfeiture.
A sufficient answer to this argument is that the evidence
does not support it.  If there had been a forfeiture of
the contracts, the fence in question, by the terms of the
contracts, became the property of the company, and the
act of removal was unlawful.  If the use of the land was
abandoned, it is inconceivable why Neumann should
keep five open gateways in the fence dividing the two
halves of the section.  The trial court made no finding
and rendered no decree in relation to the contracts
numbered 78086 and 78087.  The balance due upon
these contracts should have been ascertained and a de-
cree of foreclosure rendered thereon according to the
prayer of the petition.  There was a sufficient tender of
the amount due upon contracts 78084 and 78085, and in
their answer the defendants alleged a willingness to pay
the same, but did not bring the money into court.  Never-
theless, a decree was rendered unconditionally directing
the plaintiffs to convey the north half of the land to Mr.
Neumann.  This was erroneous.  The decree should pro-
vide that the amount of the tender be deposited with the
clerk of the district court by a designated day, and that
the plaintiffs should execute proper conveyances within
a limited time thereafter.  It should also provide for a
foreclosure of the contracts in the event of a failure on
the part of the defendants to bring the money into court
as directed.  The judgment is reversed and the cause re-
manded to the district court, not for a new trial, but for
a decree conforming to the views expressed in this
opinion.

REVERSED AND REMANDED.