336                                      388 Mass. 336

Reed National Corp. *v.* Director of the Division of Employment Security.

REED NATIONAL CORP. *vs.* DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & others.[1]

Hampden. December 9, 1982. — March 7, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Employment Security,* Stoppage of work through labor dispute, Findings
by board of review. *Words,* "Stoppage of work."

On an employer's appeal from a decision of the board of review in the
Division of Employment Security awarding unemployment compen-
sation benefits, there was no merit to the employer's contention that,
under G. L. c. 151A, § 25 (*b*), its business operations must return to
"normal," or full production, following a work stoppage due to a
labor dispute before employees involved in the dispute may collect
benefits. [338-339]
Discussion of factors affecting determinations by the Division of Employ-
ment Security with respect to the duration of a "stoppage of work" as
comprehended by G. L. c. 151A, § 25 (*b*). [339-340]
A conclusion by the board of review in the Division of Employment Secur-
ity, to the effect that a certain "stoppage of work" no longer existed as
of a specified date, although warranted by substantial evidence before
the board, could not stand where the board had failed to make suffi-
cient findings of fact to support it. [340-341]

CIVIL ACTION commenced in the Western Hampden Divi-
sion of the District Court Department of November 20,
1981.

The case was heard by *Cooley,* J.

*John T. Egan* (*Patrick L. Egan* with him) for the plain-
tiff.

*George J. Mahanna,* Assistant Attorney General, for the
Director of the Division of Employment Security.

---

[1] The other defendants are Henry J. Dugas, Jr., and nineteen other
claimants seeking unemployment benefits.

388 Mass. 336                                        337

Reed National Corp. *v.* Director of the Division of Employment Security.

ABRAMS, J. This appeal challenges the decision of the board of review (board) of the Division of Employment Security, awarding unemployment benefits to the claimants beginning the week ending August 8, 1981. The board concluded that at that time there was no longer "a stoppage of work which exist[ed] because of a labor dispute." G. L. c. 151A, § 25 (*b*). The decision was affirmed by a District Court judge and, pursuant to G. L. c. 151A, § 42, came here for direct review with a report from that judge. We reverse the judgment of the District Court and order that a judgment be entered remanding this matter to the Division of Employment Security for further proceedings.

We summarize the facts found by the board. The plaintiff corporation manufactures baseboard hot water radiators at its plant in Westfield. The claimants were employed by the corporation at that plant and are members of the United Automobile, Aerospace, and Agricultural Implement Workers Union, Local No. 430 (local). On March 4, 1981, contract negotiations between the corporation and the local broke down, and the local called a strike and established a picket line at the plant. About seventy employees, including the claimants, participated in the strike and the picket line.

Although some of the corporation's eighty management employees did part-time production work for the corporation, the plant's production in March, 1981, was less than twenty-five per cent of its production in March of the previous year. Beginning in mid-June, 1981, the corporation began to hire new employees to replace the striking workers. The plant's production in June, 1981, was forty-two per cent of its production in June, 1980, while its production in July, 1981, was sixty-six per cent of its production in July, 1980. By August, 1981, the plant had increased its output to seventy-five per cent of its August, 1980, production, and had hired about fifty-five replacement employees. By mid-September, sixty-eight replacement employees had been hired.

Based on these facts, the board found that production was "substantially curtailed" at the plant as a result of the strike. Therefore, from the first day of the strike through July 31, 1981, the claimants were unemployed due to a work stoppage caused by a labor dispute, pursuant to G. L. c. 151A, § 25 (*b*). In addition, the board found that this substantial work stoppage did not exist as of August 1, 1981, and that, therefore, the claimants could not be disqualified from receiving unemployment benefits or waiting period credits after that date.

On appeal, the plaintiff claims error in the board's decision on the grounds[2] that the decision is erroneous as a matter of law, is unsupported by substantial evidence,[3] and is arbitrary or capricious. The plaintiff asserts that, as a matter of law, before striking employees may collect benefits under G. L. c. 151A, § 25 (*b*), the employer's work must return to "normal" or full production.[4] We disagree. "[T]he proper inquiry for the board should be, as it was in this case, whether the employer's operations were substantially curtailed as the result of a labor dispute."[5] *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.*, 378 Mass. 51, 55 (1979).

A "stoppage of work" begins with a "substantial curtailment" of the employer's operations, and the stoppage of work ends when that substantial curtailment no longer exists. "[I]t is illogical to say that the stoppage does not occur

[2] These standards of review are set forth in G. L. c. 30A, § 14 (7), which G. L. c. 151A, § 42, makes applicable to this controversy.

[3] "Substantial evidence" is defined in G. L. c. 30A, § 1 (6), inserted by St. 1954, c. 681, § 1, to mean "such evidence as a reasonable mind might accept as adequate to support a conclusion."

[4] We have already decided that a "stoppage of work" under § 25 (*b*) refers to a reduction in the employer's operations, rather than to the termination of employee's work. *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.*, 378 Mass. 51, 54 (1979).

[5] By this standard, workers may receive unemployment benefits even if their unemployment is caused directly by a labor dispute, as long as their employer's operations are not substantially curtailed.

in the first place until production has fallen off by at least 20 or 30 per cent and yet to hold that the stoppage continues until the plant again reaches 100 per cent of its productive capacity." *Monsanto Chem. Co.* v. *Commissioner of Labor*, 229 Ark. 362, 365-366 (1958), citing Williams, The Labor Dispute Disqualification — A Primer and Some Problems, 8 Vand. L. Rev. 338, 340 (1955). Thus, the plaintiff's claim that, as a matter of law, an employer's work must return to "normal," or full production, before striking employees may collect benefits under G. L. c. 151A, § 25 (*b*), fails.[6]

The determination whether there is no longer substantial curtailment of the employer's operations is primarily a question of fact for the board. "Such a determination, involving the application of the standard to the facts found, brings into play the experience, technical competence, and specialized knowledge of the agency." *Director of the Div. of Employment Sec.* v. *Fingerman*, 378 Mass. 461, 463 (1979). "The question of how much disruption of normal operations is necessary to constitute a 'stoppage of work' is of course a matter of degree. . . . We have not attempted to declare a precise definition of the words 'stoppage of work' in our prior cases, and in view of the diversity of factual situations which might arise in future cases, we decline to do so now." *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.*, 378 Mass. 51, 55-56 (1979).[7]

---

[6] In those Massachusetts cases in which "normal" operations were resumed after a stoppage, we did not reach this question. See *Worcester Telegram Publishing Co.* v. *Director of the Div. of Employment Sec.*, 347 Mass. 505, 508 (1964), and *General Elec. Co.* v. *Director of the Div. of Employment Sec.*, 349 Mass. 358, 364 n.5 (1965), citing *Worcester Telegram, supra.*

[7] In *Adomaitis* v. *Director of the Div. of Employment Sec.*, 334 Mass. 520, 522 (1956), the board concluded that a thirty-five per cent drop in both production and man-hours constituted a "stoppage of work." On the other hand, in *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.*, 378 Mass. 51, 56 (1979), we held that because production continued as normal during the strike, although management work suffered, there was no stoppage of work and benefits were allowed.

Cases from other jurisdictions indicate that, depending on the facts, substantial curtailment of operations may occur when production drops by twenty or thirty per cent. See Shadur, Unemployment Benefits and the "Labor Dispute" Disqualification, 17 U. Chi. L. Rev. 294, 310-311 (1950); Williams, The Labor Dispute Disqualification — A Primer and Some Problems, 8 Vand. L. Rev. 338, 349 (1955). See also *Monsanto Chem. Co.* v. *Commissioner of Labor,* 229 Ark. 362 (1958); *Meadow Gold Dairies — Hawaii, Ltd.* v. *Wiig,* 50 Hawaii 225 (1968); *Buzza* v. *Unemployment Compensation Comm'n,* 330 Mich. 223 (1951); *Magner* v. *Kinney,* 141 Neb. 122 (1942); *In re Stevenson,* 237 N.C. 528 (1953); *Cumberland & Allegheny Gas Co.* v. *Hatcher,* 147 W. Va. 630 (1963). To determine the claim of substantial curtailment, the board should view the drop in production and the decreased number of employed production workers, as compared with those figures from the previous year, in the context of all the circumstances, including the over-all status of the corporation's operations. See Lewis, The "Stoppage of Work" Concept in Labor Dispute Disqualification Jurisprudence, 45 J. Urb. L. 319, 343 (1967).

Although there was substantial evidence before the board justifying its conclusion allowing benefits after August 1, 1981, we cannot make the findings necessary to reach that conclusion. "It is . . . the function of the board and not a judge to make findings of fact" in these cases. *White* v. *Director of the Div. of Employment Sec.,* 382 Mass. 596, 599 (1981). In this case, the board made only skeletal findings on its conclusion that a "stoppage of work no longer exist[ed] because of a labor dispute" after August 1, 1981. See G. L. c. 151A, § 25 (*b*). We cannot assess the weight, if any, the board gave to that evidence before it, which supported its decision.[8] "In the absence of [sufficient] find-

---

[8] For example, there was evidence that five of the seventy-five members of the bargaining unit had been laid off before the strike began. The corporation's attorney stated that he did not know the meaning of the term "full" production, when applied to his corporation's pre-strike performance. Thus, the board may have concluded that the end of the stoppage

ing[s] on the material factual issue[s] . . . , the agency's decision cannot stand even if supported by substantial evidence." *Torres* v. *Director of the Div. of Employment Sec.*, 387 Mass. 776, 779 (1982). See *Manias* v. *Director of the Div. of Employment Sec.*, *ante* 201 (1983).

The judgment is reversed and the case is remanded to the District Court, where a judgment shall be entered remanding the case to the Division of Employment Security for further proceedings consistent with this opinion.

*So ordered.*

.

---

of work in this case did not need to be as close to full production as would be required in another case.

In addition, the board did not award benefits until five months after the beginning of the strike. The board was permitted to take into account the fact that a "stoppage of work caused by a labor dispute . . . must not exceed the time which is reasonably necessary and required to physically resume normal operations in such plant or establishments." *Carnegie-Ill. Steel Corp.* v. *Review Bd. of Ind. Employment Sec. Div.*, 117 Ind. App. 379, 392 (1947). Furthermore, the board may consider the length of time used for a return to substantially normal production as important for avoiding any temptation to "continue the stoppage indefinitely by leaving a small department of [the] plant idle." *Monsanto Chem. Co.* v. *Commissioner of Labor*, 229 Ark. 362, 366 (1958).

The board also had evidence before it that the corporation had relocated an unspecified amount of the work done at its Westfield plant to its other plants. The board was entitled to distinguish *General Elec. Co.* v. *Director of the Div. of Employment Sec.*, 349 Mass. 358 (1965), in considering this evidence, because here the work was done within the corporation rather than by an outside entity, so that the total production of the corporation may not have been substantially curtailed. In addition, there was no evidence of the specific amount of work sent to other plants above the amount relocated in the normal course of the corporation's business.