REED NATIONAL CORP. *vs.* DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & others.[1]

Hampden. November 5, 1984. — January 22, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Employment Security*, Stoppage of work through labor dispute. *Words,*
"Stoppage of work."

A determination by the board of review in the Division of Employment
Security that a certain "stoppage of work" no longer existed as of a
specified date, thus permitting the claimants to recover unemployment
compensation benefits, was warranted by findings revealing that the
board viewed a drop in production at one of the employer's plants and
a decreased number of employed production workers, as compared with
figures from the previous year, in the context of all the circumstances,
including the over-all status of the corporation's operations.
[722-723]

An employer's demonstration of a twenty-five percent drop in production
in one of its plants, without more, would not warrant a conclusion that
there was a "stoppage of work" as a matter of law, so as to preclude
claimants from receiving unemployment compensation benefits under
G. L. c. 151A, § 25 (*b*). [724]

On an employer's appeal from a decision of the board of review in the Divi-
sion of Employment Security concluding that a certain "stoppage of
work" no longer existed as of a specified date, thus allowing the claimants
to recover unemployment compensation benefits, there was no merit to
the employer's contention that the board's decision violated public policy
by forcing the employer to subsidize a strike against itself, where the
board did not award benefits until the employing unit had returned to
substantially normal production. [724-725]

CIVIL ACTION commenced in the Western Hampden Division
of the Distict Court Department on November 20, 1981.

The case was heard by *Sidney M. Cooley*, J.

*John T. Egan* for the plaintiff.

[1] The other defendants are Henry J. Dugas, Jr., and nineteen other claim-
ants seeking unemployment benefits.

*Willie Ivory Carpenter, Jr.,* Assistant Attorney General, for Director of the Division of Employment Security.

ABRAMS, J. The sole question on this appeal is whether there was a "stoppage of work" at the Westfield plant of the Reed National Corp. beginning the week ending August 8, 1981, so as to preclude the claimants from receiving unemployment benefits under G. L. c. 151A, § 25 (*b*).[2] In *Reed Nat'l Corp.* v. *Director of the Div. of Employment Sec.,* 388 Mass. 336 (1983), this court held that the board of review (board) of the Division of Employment Security, in its first determination of this same issue, did not make findings sufficient to support its conclusion that there was no stoppage. *Id.* at 340. We therefore remanded the case to the board for further proceedings. *Id.* at 341. The board, on remand, reviewed the evidence and reaffirmed its original decision allowing the claimants to recover unemployment benefits.[3] The decision was affirmed by a District Court judge and came here for direct review, pursuant to G. L. c. 151A, § 42. We affirm.

We briefly reiterate some of the principles by which we are guided in reviewing the board's determination whether there was a "stoppage of work" under G. L. c. 151A, § 25 (*b*). "A 'stoppage of work' begins with a 'substantial curtailment' of the employer's operations, and the stoppage of work ends when that substantial curtailment no longer exists." *Reed Nat'l Corp.,* *supra* at 338. The question of a "substantial curtailment of the employer's operations is primarily a question of fact for the board." *Id.* at 339. In reviewing this decision, we are mindful

[2] General Laws c. 151A, § 25 (*b*), as amended through St. 1967, c. 480, § 3, provides in relevant part: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for — . . . (*b*) Any week with respect to which the director finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at his factory, establishment or other premises at which he was employed . . . ."

[3] "On remand the board of review may [make a determination] on the evidence in the record or on additional evidence. Alternatively, the board may send [the] matter back to the review examiner for a determination . . . on the evidence in the record or for an evidentiary hearing." *Graves* v. *Director of the Div. of Employment Sec.,* 384 Mass. 766, 769 (1981). See *Manias* v. *Director of the Div. of Employment Sec.,* 388 Mass. 201, 206 (1983).

393 Mass. 721 723

Reed National Corp. *v.* Director of the Division of Employment Security.

of the deference due the board's expertise, experience, and technical competence. See *id.* See also *Director of the Div. of Employment Sec.* v. *Fingerman,* 378 Mass. 461, 463 (1979). We turn to the corporation's challenge to the board's decision.

On appeal, the corporation claims error in the board's decision on the grounds that the decision is unsupported by substantial evidence, is erroneous as a matter of law,[4] and violates the public policy of this Commonwealth.

The corporation contends that the board, on remand, made no significant, additional findings to justify its second decision; in the absence of such findings, the company argues, "the agency's decision cannot stand even if supported by substantial evidence." *Torres* v. *Director of the Div. of Employment Sec.,* 387 Mass. 776, 779 (1982). In issuing its second decision, the board specifically noted the following findings: (1) five workers at the Westfield plant had been laid off due to lack of work prior to March 4, 1981, the day the strike began; (2) the corporation had relocated "a considerable, but unspecified, amount of work" from the Westfield plant to another of its plants during the disputed period; (3) the twenty-five per cent drop in production pertained to the Westfield plant only; and (4) "there [was] no evidence that the employing unit exceeded the time reasonably necessary . . . to . . . resume substantially normal production in August 1981 or did anything to continue the stoppage." The board's original decision and the additional findings reveal that the board viewed "the drop in production and the decreased number of employed production workers, as compared with those figures from the previous year, in the context of all the circumstances, including the over-all status of the corporation's operations" in determining whether there was a stoppage of work. *Reed Nat'l Corp., supra* at 340. We conclude, therefore, that the board made sufficient findings to warrant its determination that there was no stoppage of work.

---

[4] These standards of review, set forth in G. L. c. 30A, § 14 (7), are applicable to this dispute under G. L. c. 151A, § 42. "Substantial evidence" means "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6), inserted by St. 1954, c. 681, § 1.

The corporation next argues that that decision is erroneous as a matter of law because "[i]t is not a large step for the Court to hold that a twenty-five percent decrease in production is a substantial stoppage of work." However, the "diversity of factual situations which might arise in future cases," see *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.,* 378 Mass. 51, 56 (1979), militates against the application of a simple formula in determining the existence of a "stoppage of work." Thus, the demonstration of a twenty-five per cent drop in production[5] without more does not warrant the conclusion that there was a "stoppage of work" as a matter of law.

Contrary to the plaintiff's assertions, the decisions in *Adomaitis* v. *Director of the Div. of Employment Sec.,* 334 Mass. 520 (1956), and *General Elec. Co.* v. *Director of the Div. of Employment Sec.,* 349 Mass. 358 (1965), do not establish that the board's decision was erroneous as a matter of law. In *Adomaitis, supra* at 522, the disruption in delivery of materials to the company resulted in a thirty-five per cent drop in production. The board found no similar disruption here.[6] In *General Elec. Co., supra* at 364, the employer was forced to relocate work to an outside entity; here, however, the board found that the plaintiff had relocated work to another of its own plants. See *Reed Nat'l Corp., supra* at 340 n.8. The plaintiff, in short, failed to convince the board that production was substantially curtailed.

Last, the plaintiff maintains that the board's decision violates the public policy of this Commonwealth. That decision, the plaintiff argues, "permits the intrusion of the state into the collective bargaining process as a direct ally of the Union and forces Reed National to subsidize a strike against itself." But

---

[5] This argument is especially unpersuasive in light of the board's specific finding that the twenty-five per cent drop in production applied only to the plaintiff's Westfield plant and did not include work sent to another plant. The plaintiff furnished no evidence suggestive of a drop in production in its entire operation.

[6] Although the plaintiff introduced evidence that "[c]ertain truckers" refused to cross picket lines, the record does not indicate that materials failed to reach the Westfield plant.

the board did not award benefits until five months after the strike began, by which time the employing unit had returned to substantially normal production. Simply stated, there was no longer any strike which could be financed by the use of unemployment compensation funds. The decision of the District Court is affirmed.

*So ordered.*