437 Mass. 295 (2002)                                    295

Hertz Corporation *v.* Acting Director of the Division of Employment & Training.

## The Hertz Corporation *vs.* Acting Director of the Division of Employment and Training & others.[1]

Suffolk. April 1, 2002. - July 12, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Employment Security,* Eligibility for benefits, Stoppage of work through labor dispute, Findings. *Words,* "Stoppage of work."

A determination by the board of review in the Division of Employment and Training that there was no "stoppage of work" when more than one hundred members of a labor union went on strike for six weeks was not arbitrary, based on an error of law, or unsupported by substantial evidence; consequently, those union members who filed claims were entitled to unemployment benefits for the duration of the strike. [297-301]

Civil action commenced in the East Boston Division of the District Court Department on June 18, 1998.

The case was heard by *Joseph M. Walker, III,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Daniel J. Hammond,* Assistant Attorney General, for Acting Director of the Division of Employment and Training & another.

*Barry A. Guryan* for the plaintiff.

*Matthew E. Dwyer,* for International Brotherhood of Teamsters, Local 25, was present but did not argue.

Ireland, J. In this case we must determine whether, when more than one hundred members (employees) of the International Brotherhood of Teamsters, Local 25 (union), went on strike against the Hertz Corporation (Hertz) for six weeks in 1996, there was a "stoppage of work." If there was no "stoppage of work" as a result of the strike, then the employees are entitled to unemployment benefits for the duration of the strike; however, if there was a "stoppage of work," then the employees

---

[1]The board of review of the Department of Labor and Workforce Development and the International Brotherhood of Teamsters, Local 25.

are not entitled to unemployment benefits for that time. G. L. c. 151A, § 25 (*b*). Because we conclude that there was no stoppage of work, we affirm the decision of the District Court.

1. *Procedural history.* The employees filed claims for unemployment benefits with the division of employment and training. Its deputy director determined that no stoppage of work had occurred, and that the claimants were entitled to unemployment benefits. Hertz appealed to the board of review (board) of the Department of Labor and Workforce Development (department). After hearings, the board affirmed the decision of the deputy director. Hertz sought judicial review in the District Court, which also affirmed. Hertz then filed an appeal in the Appeals Court, which vacated the judgment of the District Court and ordered entry of judgment in favor of Hertz, concluding that a stoppage of work occurred as a result of the labor strike, and that the employees are not entitled to unemployment benefits. See *Hertz Corp.* v. *Acting Director of the Div. of Employment & Training*, 52 Mass. App. Ct. 461, 470 (2001). We granted the union's application and the department's application for further appellate review.

2. *Facts.* We summarize the board's findings of fact, which are not disputed. Hertz is primarily in the business of renting automobiles and other vehicles to the general public. The employees — including clerks, mechanics, courtesy bus drivers, and counter sales representatives — were on strike from June 10 until July 22, 1996, when the dispute was settled and the employees returned to work. The employees filed claims for unemployment benefits for the period of the strike.

During the strike, Hertz relocated members of management and nonstriking workers to perform the functions of the striking employees. As a result, there was no decrease in rentals or revenue. The regular duties of the managers and nonstriking employees went undone, however. For example, the "fleet manager" normally analyzes market conditions to project how many vehicles Hertz will need, but during the strike was able to perform this job only "on a minimal basis" while also washing vehicles and assisting the security staff. Hertz "contracted out" its twenty-four hour road service for customers whose rental vehicles break down, and regular maintenance on the rental

fleet and courtesy buses was limited to conditions that would raise safety concerns. Managers pitched in with the "back office" paperwork, including obtaining titles, registrations, and registration plates for new vehicles, tracking additions and deletions to the fleet, and preparing business and accident reports. While the "more critical" of these tasks were performed, "much of the paperwork did not get filed at that time and multiple sets of car keys were lost."

Additionally, two planned construction projects were delayed, the used car sales at the McLellan Highway location ceased, and Hertz sent the "wrong mix of cars" to its Nantucket location, an error that could not be corrected during that tourist season due to local regulations and which "affected Hertz's business on the island further, because the number of vehicle permits issued by local authorities that year was used as a basis for issuing permits the following year." The board determined, however, that the construction project delays caused no financial losses at all, and financial losses suffered by the McLellen Highway and Nantucket locations were minimal.

3. *"Stoppage of work."* Unemployment benefits are not available[2] if the "unemployment is due to a stoppage of work which exists because of a labor dispute." G. L. c. 151A, § 25 (*b*). For there to be a "stoppage of work," operations must be "substantially curtailed." *Reed Nat'l Corp.* v. *Director of the Div. of Employment Sec.*, 388 Mass. 336, 338 (1983), *S.C.*, 393 Mass. 721 (1985). How much disruption is required to constitute a substantial curtailment is a fact-specific inquiry; there is no percentage threshold or numerical formula. See *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.*, 378 Mass. 51, 55-56 (1979); *Reed Nat'l Corp.* v. *Director of Div. of Employment Sec.*, 393 Mass. 721, 724 (1985).

Hertz asserts that the board's determination of no stoppage is based on an error of law, unsupported by substantial evidence, and arbitrary and capricious. Because we conclude that each of these assertions fails, we defer to the decision of the board. See G. L. c. 151A, § 42; G. L. c. 30A, § 14 (7). See also *Boguszewski* v. *Commissioner of the Dep't of Employment & Training*, 410 Mass. 337, 345-346 (1991), and cases cited.

---

[2]Subject to exceptions not relevant here. See G. L. c. 151A, § 25 (*b*).

The board applied the correct legal standard, stating that "[t]he proper inquiry for the [b]oard in determining the existence of a stoppage of work is whether the employer's operations were substantially curtailed as a result of a labor dispute." Hertz argues that the board did not apply the standard properly, however, claiming that the board focused only on Hertz's steady rate of rentals and revenue, rather than on its operations as a whole. This is an inaccurate recitation of the record. The board's decision explicitly states that it also considered the diminished performance of managerial and other functions during this time, the delay in the construction projects, and the difficulties faced by the McLellen Highway and Nantucket locations.

Hertz next argues that there is no substantial evidence on the record adequate to support the board's decision. We disagree. "Since the main business of the employer . . . continued uncurtailed, we cannot say that the board was in error in finding that there was no 'stoppage of work.' " *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec., supra* at 56.

Hertz first points to three conclusions that it argues are not supported by the board's findings of fact: (1) managers "performed the functions of the striking bargaining unit employees as well as some of the normal functions of management"; (2) there was "no reliable evidence of an increase in customer complaints due to the strike"; and (3) "the minor reduction in so-called back office operations did not constitute a substantial work stoppage."

The first of these plainly is supported by the record. The board found that approximately 133 to 165 nonstriking workers and management performed the duties of the striking employees, and while Hertz complains that not *all* of the employees' functions were performed, the word "all" does not appear in the contested sentence. In addition, the record is replete with examples of managers performing "some" of their normal functions: the fleet manager performed his duties, albeit "on a minimal basis"; the pricing and yield manager performed his duties approximately two hours a day; managers staffed the Logan Airport Hertz counters with managers, albeit on a "seat of the pants" or "plug the holes" basis; the station manager collected and made the usually daily deposits once or twice a

week, and performed her duty of ordering supplies and road maps "at some point during the strike."

The second and third of these criticisms also fail. In challenging the conclusion that there was "no reliable evidence of an increase in customer complaints due to the strike," Hertz points to findings of customer complaints. Nowhere, however, is there any evidence of the rate of customer complaints before the strike, and hence no evidence of an increase thereafter. Last, Hertz complains that the reduction in back office operations cannot be characterized as "minor," but the board found that "managers performed some of the more critical of these functions" during the strike, and we presume that Hertz does not intend to argue that it rented vehicles without registration plates or registrations.

Hertz next points to *General Elec. Co.* v. *Director of the Div. of Employment Sec. (No. 2)*, 349 Mass. 358, 364-365 (1965), where we reversed the board's determination of no stoppage. The facts here are quite different. In the *General Electric* case, the company's welders went on strike, and it decided to lay off sheet metal workers and others whose work was interdependent with the welding work. The company simply "farmed out" the entire welding operation in order to fulfil its obligations to its customers. See *id.* at 359. We explained that, although production levels did not decrease, see *id.* at 362, there was a stoppage of work where the labor dispute "prevented the company from having a substantial amount of work performed in its own plant." *Id.* at 364. In contrast, the only work Hertz contracted out was its road service — a supplemental support function of its main business of renting vehicles, not comparable to the contracting out of "an important segment of the production process." *Id.* at 362.

The board was within its discretion to conclude that the combined impacts of the strike detailed in its findings of fact did not cause a substantial stoppage of Hertz's operations as a whole. See *Reed Nat'l Corp.* v. *Director of the Div. of Employment Sec.*, 388 Mass. 336, 340 (1983). Although certain functions went unperformed while managers and nonstriking workers filled in for the striking employees, a "stoppage of work" requires more than the holes in coverage that inevitably result

when staff is temporarily diverted from one place to another. If these sorts of disruptions sufficed to constitute a "stoppage of work," then virtually every strike would result in benefits disqualification, an outcome explicitly rejected by the Legislature when it revised the unemployment compensation statute in 1937. Compare St. 1937, c. 421, § 1, with St. 1935, c. 479, § 5 (amending statute from disqualifying any claimants whose unemployment is due to "strike, lockout or other trade dispute" to disqualifying only those whose unemployment is due to "stoppage of work"). See *Boguszewski* v. *Commissioner of the Dep't of Employment & Training*, 410 Mass. 337, 341 (1991); *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.*, 378 Mass. 51, 53-54 (1979).

Finally, Hertz argues that the board's decision was arbitrary, claiming that it contradicts the board's prior decisions in the *Boguszewski* case, *supra*, and Matter of Norrgard & New England Tel. M-33872-A (Aug. 26, 1993). We disagree. In cases where output and revenues are unaffected, high levels of disruption in support operations such as "maintenance, inspection, testing, installation, replacement, clerical, and administrative functions" will constitute a "substantial curtailment" of the employer's operations, *Boguszewski* v. *Commissioner of Dep't of Employment & Training*, *supra* at 346, while lesser disruptions in those functions will not, see *Westinghouse Broadcasting Co.* v. *Director of the Div. of Employment Sec.*, *supra* at 55-56. The board's decisions have been consistent: it simply found that the disruptions in the *Boguszewski* and Norrgard cases were of greater magnitude than those here. Given the fact-specific nature of the inquiry, it is not surprising that different cases merit different results, even though the employers suffered disruptions in similar categories of operational functions. Hertz has failed to carry its burden on appeal to demonstrate any inconsistency in these cases.

"The board's decision was well-reasoned and contained detailed findings, and determined a question which is 'primarily a question of fact for the board.' . . . It was neither arbitrary, based on an error of law, nor unsupported by substantial evidence." *Boguszewski* v. *Commissioner of the Dep't of Employment & Training*, *supra* at 346, quoting *Reed Nat'l Corp.*

v. *Director of the Div. of Employment Sec.*, 388 Mass. 336, 339 (1983), *S.C.*, 393 Mass. 721 (1985). Judgment is to be entered in the District Court affirming the decision of the board.

*So ordered.*